Mr. Justice Cox
delivered the opinion of the court.
Ou the 24th of September, 1872, the German American Savings Bank was incorporated under the General Incorporation Acts of May 5 and June 17,1870, with a capital of $127,000.
On the 21st of January, 1876, John Hitz transferred to the defendant, Jane O. Hitz, his wife, 173 shares of the stock of that bank, of the par value of $17,300.
On the same day, Win. E. Mattingly transferred 10 shares, E. B. Donaldson, 10 shares, and O. E. Prentiss, 7 shares, of the stock to Mrs. Hitz, thus making her the owner of 200 shares, of the par value of $20,000.
In further proof of the ownership, three checks were put in evidence, dated respectively, May 1, 1876, November 1, 1876, and May 1, 1877, each for $800, signed by C. E. Prentiss, cashier, in favor of Mrs. Hitz, for dividends upon the stock in her name, all apparently indorsed by her to her husband.
On the 7th da}^ of May, 1877, a paper was signed apparently by all the stockholders, including Mrs. Plitz, authorising and empowering the trustees to change and convert the savings bank into a national banking association, under acts of Congress in such case made and provided, and to execute the articles of association and organization certificate required by the statute, &c., the new bank to bear the name of the German American National Bank of Washington.
On the 14th of May, 1877, J. S. Langworthy, acting comptroller of the currency, executed the certificate required by *487 law, that the German American National Bank of Washington is authorized to commence the business of banking, as provided in section 5169 Bov. Stat.
It does not appear that auy new stock book was opened, •or new certificates of stock issued in the name of the new bank, but the books of the old bank were transferred to the new, and the stockholders in the old, were assumed to be •stockholders in the new bank.
Sworn lists of these stockholders of the German American National Bank, were, from time to time, furnished to the Comptroller of the Currency, in conformity with law, all of which included Mrs. Hitz’s name.
On the 20th of October, 1878, the German American National Bank, of Washington, failed and suspended payment, and the plaintiff was appointed receiver of the bank, by the comptroller of the currency.
On the 11th of June, 1880, the comptroller certified that, •upon an examination of the affairs of the bank, he found it necessary to enforce the individual liability of the shareholders of the bank, as provided b3r act of Congress, and thereupon ordered and made an assessment upon them to the amount of one hundred dollars per centum of the par value of the shares held by them respective!}'. On the same day the receiver notified Mrs. Hitz of this assessment and requested payment of $50 on each share of her stock within 30 days, and $50 more within 60 days, and these payments not having been made, the receiver instituted this suit against Mrs. Hitz, to recover the sum of $20,000.
The defendant filed pleas : 1. That she was never indebted ; 2. That she never owned or held any stock of the German American National Bank ; 3. And that she is, and has been, since August 5, 1856, a feme covert.
To the third plea, plaintiff' replied that the stock was the .property of the defendant, owned by her in her own right, with the consent and permission of her husband.
The defendant, by leave, filed a fourth plea, denying the •existence of such a corporation as the German American .National Bank.
*488 At the trial the court directed a verdict for the defendant..
The first question made in argument here, relates to the legality of the conversion of the savings bank into the-national bank. It is maintained for the defence that there is no authority of law for such conversion.
Section 5154, Rev. Stats., euacts :
“ That any bank incorporated by special law, or any banking institution organized under a general law of any State, may, by authority of this act, become a national association,” &c.
This applies in terms, only to banks in the Slates where they are organized under general laws, and if the term u special law ” is not confined to State laws, it would not embrace the casé of a bank organized under a general law of Congress, as was the case with the German American Savings Bank of this District. But by act of Congress of June 30, 1876, it was enacted that:
“All savings or other banks, now' organized, or which shall hereafter be organized in the District of Columbia under any act of Congress, which shall have capital stock paid up in whole or in part shall be subject to all the provisions of the Revised Statutes, and of all acts of Congress applicable to national banking associations, so far as the same may be applicable to such savings or other banks ; provided, that such savings banks now established shall not be required to have a paid-up capital exceeding one hundred thousand dollars.”
It might be a question whether this act does not, by its own operation, and without the necessity of any action by the banks, convert them at once into national banks, or, at least, engraft upon their charters all the features of a national bank, not inapplicable to or inconsistent with them, of which the individual liability of shareholders would be one.
Such has not been the practical interpretation of the law, but it has been supposed, at least, to authorize the conversion of the banks in this District into national banks, and this interpretation has been acted on repeatedly.
It is maintained here, however, that the provision in the banking act for the conversion of other banks into national banks is not applicable to savings banks.
*489 The reasoning on the subject is entirely theoretical and founded on the difference in the objects and operations of the two kinds of banks. The question, however, will have to be determined by an interpretation of the acts of Congress, and it seems to us to be very clearly determined by the proviso, above cited, in the act of June, 1876, taken in connection with the prior acts.
The banking act provides, with reference to associations originally organized under it, “ that no association shall be organized under this title with a less capital than one hundred thousand dollars.” (Sec. 5188 Rev. Stat.)
Section 5154, which provides for the conversion of existing banks into national banks, enacts that, “ no such association shall have a less capital than the amount prescribed for associations organized under this title.”
A capital of $100,000 was made a condition precedent to the original organization of a national bank, and to the conversion of another bank into one. The requirement of such a capital by the act is for no other purpose, and has reference to no other object.
Then the proviso in the act of June 30,1876, that such savings banks, now established (i. e., in this District), shall not be required to have a paid-up capital exceeding one hundred thousand dollars necessarily assumes and implies that the conversion feature in the national banking act, which requires such capital, would be applicable to such savings banks in the District of Columbia. It would have, otherwise, no meaning. It is substantially an enactment, that the laws relating to national banks, including the conversion provision, shall be applicable to savings and other banks in this District, except that savings banks now existing shall not be obliged to have a capital of $100,000 in order to be converted into national banks. ' •
We are satisfied, therefore, that it was competent for the German American Savings Bank to avail itself of the provision in the law for conversion into a national bank.
And the certificate of the comptroller of the currency is conclusive, according to the decision of the Supreme Court *490 in Casey vs. Galli, 94 U. S., 673, as to the regularity of the proceedings by which that conversion was effected.
We may add, that according to the same decision, where a shareholder of a corporation is called upon to respond to a liability as such, he is not permitted to deny the existence or the legal validity of such corporation. It is not, therefore, open to the defendant to rely upon this defense, if she is in the position of an ordinary shareholder in this bank.
Mrs. Hitz was a shareholder in the Savings Bank, as far as the books and transfers show. Excluding Mrs. Hitz, the ■owners of more than two-thirds of the stock consented to the conversion into a national bank and such conversion, according to the statute, took place without reference to her concurrence. She then became entitled to an equivalent amount of stock in the national bank. It would perhaps have been more regular for a new stock book to be opened and new certificates to be issued in the name, of the national bank. There is, however, nothing in the law, prescribing the form of the stock book or of the certificates of stock, and we see nothing to prevent the new bank from treating the ■old books and certificates as sufficient evidence of title in the new concern. Neither the rights nor liabilities of the stockholders could be effected by the mere omission to issue a new form of stock certificate to them. To hold otherwise would be to allow all the stockholders to escape liability, by the mere omission of the formality of issuing the shares in a new form.
All this is clear enough when applied to shareholders in the savings bank, who were, sui juris, capable of consenting and w,ho actually did consent to the change.
But suppose the case of a shareholder who did not consent, or was not capable of consenting, to the conversion, and who did not, in fact, receive any certificate of stock in the new bank. Although, without his consent, the legal metamorphosis of the bank might be complete, could he be properly considered a stockholder in the new bank? For example, Mrs. Hitz, received no certificate of stock in the new bank, nor is any act of hers shown in connection with it, after its *491 organization. If she became a stockholder in it at all, it must have been in virtue of her consent that her original stock should be converted into stock of the national bank. If she could consent to this, she was as much a stockholder in this new bank as the other original shareholders of the savings bank, notwithstanding any omission to issue new certificates. If not, it would be difficult to make out her membership in the new concern. How far, then, was she capable of giving that consent ?
As to part of this stock, to the amount of $2,700, it was, prima facie, acquired during marriage, otherwise than by gift or conveyance from her husband. It may be that he paid the consideration for it, and that it was really his gift, but that is not the present aspect of the case.
As to this much of the stock, then, under the Married Woman’s Act of 1869, her right to it was as absolute as if she were unmarried ; she could convey, devise and bequeath it in the same manner and with like effect as if she were unmarried, and might contract, sue and be sued in her own name, in all matters having relation to it, in the same manner as if she were unmarried. If so, she could consent, like a feme sole, to its conversion into national bank stock, and take that in exchange for it, with all the incidents of such ownership.
We have little difficulty, then in holding upon the present showing, that quoad this stock, the defendant was a feme sole and sui juris, and is amenable to all the consequences of its ownership and conversion which a feme sole would be, including the liability asserted in this action.
The larger part of the savings bank stock was transferred to the defendant immediately by her husband.
We see no legal difficulty in the way of the husband’s making this transfer, so as to vest the legal title to his wife.
With his assent, she might acquire title by purchase from strangers, and except where it interferes with the rights of his creditors, there is no reason why he may not transfer the legal title to any of his property into her name, except that *492 at common law a conveyance of realty could not be made directly from him to her. He, however, may have his own shares of stock cancelled and new ones issued to his wife,, and her title will be the same as if they were derived from a stranger. She has the legal capacity to receive gifts, may be the obligee of a bond or receive a transfer of stock in moneyed corporations, and this, though the consideration may have proceeded wholly from the husband, and in such case she may hold against the legatees and heirs, but not against the creditors of the husband. Fisk vs. Cushman, 6 Cush., 20. If, however, this property is not given to her sole and separate use, which I assume to be the ease here, because there is nothing to indicate the contrary, it would still be subject to the husband’s common law rights. Stock of an incorporated company is a chose in action. The husband has but a qualified property in it — a right to reduce it to his possession by transferring it into his own name or selling it. A mere collection of the dividends would not be a reduction to his possession of the principal. Burr vs. Sherman, 3 Bradf., N. Y., 85.
But.until it is reduced to his possession it remains the wife’s property, and survives absolutely to her, on her husband’s death before her.
But, on the other hand, the wife cannot, during coverture, transfer her own choses in action of her own motion. And if Mrs. Hitz undertook, on her own responsibility, to convert her shares of savings bank stock, given to her by her husband, into national bank shares, all which involves a transfer of choses in action, in which the husband has a qualified property, it would probably have to be held a void proceeding.
Yet it must be deemed settled law that a wife may transfer her choses in action, with the consent of her husband.
It has been held, for example, that a bill of exchange or promissory note, payable to a married woman, may be endorsed in her own name, and the title passed, with the husband’s consent. Menkins vs. Hernight, 17 Mo., 287; McLain vs. Weidmeyer, 25 Mo., 364.
*493 A transfer in exchange for other choses in action would seem to be clearly within the same rule.
If, therefore, Mrs. Hitz acted with her husband’s consent, in agreeing to convert her savings bank stock into national bank stock, of which the fact of their uuiting in the same power of attorney, for that object, would seem to be evidence, we have a regular and legal acquisition by her of the stock of the German American National Bank.
Does the usual consequence of that ownership devolve upon her, as to that part of the stock which she holds, only as a married woman would hold it, at common law, i. e., the personal liability to be assessed for losses to the amount of the par of the stock ?
Section 5151, Rev. Stat., provides that : “ The shareholders of every national banking association shall be held individually responsible, equally and rateably, and not one for another, for all contracts, debts and engagements of such association, to the extent of the amount of their stock therein, at the par value thereof.”
We can conceive a state of facts to which this would not apply, even where one is a nominal shareholder. If, for instance, the stock had been transferred to Mrs. Hitz, and the subsequent change made in the bank without her knowledge or consent, it would be a very forced construction of the law which would extend it to such a case. But we assume for the argument, that the contrary was the case, since evidence was admitted without objection, tending to show that she received dividends on the stock and consented in writing, as a stockholder, to the change.
The statute contains no exception, in terms, in favor of married women. It seems hard, and therefore difficult to conceive that Congress intended that a married woman, acquiring her stock, it may be under marital influence, and also unable to alien it herself, should yet be held liable, in consequence of that ownership, to make good, out of her other estate, losses resulting from failure of the bank.
Tet we find even a harder case clearly enacted in the statute :
*494 “ Persons holding stock as executors, administrators, guardians or trustees, shall not be personally subject to any liability as stockholders; but the estates and funds in then-hands shall be liable in like manner and to the same extent as the testator, intestate, ward or person interested in such trust funds would be if living and competent to act and hold the stock in his own name.” Sec. 5152 Rev. Stat.
So that a young ward, whose guardian invests in national bank stock, without his knowledge or consent, and even where he is incapable of assenting at all, is liable, in hie other estates under the individual liability clause in the statute.
This very difficulty was considered by the Court -of Appeals of New York, in the case entitled, “ In the matter of the Reciprocity Bank,” 22 N. Y. R., 15, which arose undeia statute of New York relating to State banks, similar to-the U. S. statute, and in substantially identical terms.
The court said :
“The legislature, if it had thought proper to do so, might have made an exception in favor of married woman, but no such exception was made. It is said that Mrs. Lansing, being under the disabilities of coverture, could not make a transfer of her shares and so avoid this liability, if she had wished to do so. This is a circumstance which might have been properly addressed to the legislative discretion if, indeed, the legislature had any discretion, under the injunction of the constitution, but it does not authorise the courts to allow an exemption, where neither the constitution nor the law has declared any. It is also said that femes coverts are not liable to suit at common law ; and, in general, this is true. It is also true that the apportionment of liability among stockholders in banks, when duly confirmed, becomes a judgment against each stockholder, to be enforced by execution as in other cases. But it was competent for the legislature to depart from the rules and analogies of the common law, and to make married women and their estates liable in this proceeding as other shareholders in banks are made liable. This, we think, has been done, in order to *495 effectuate the policy in which the constitutional provision and the statute are founded. It might go far to defeat that policy, if married women could take and hold stock without liability to creditors.”
In the same case, in the Supreme Court of New York, reported in 29 Barb., 382, it had been laid down that “ married women eoulcl own stock in bank in their own right both at common law and under the statute of 1848 (of New York), and the legislature had the power to alter the common law so as to make them personally liable to the amount of their stock. It has thought proper to do so, and we are bound in this,'as in all other cases, to enforce their liability.”
In the case of Anderson vs. Line, in the U. S. Circuit Court for the Eastern District of Pennsylvania, reported in 14 Fed. Reporter, 405, it appeared that shares of stock in a national bank were transferred by a husband directly to his wife, as in this case, and that suit was instituted against her and her husband. And the court held that the coverture did not exempt her from the liability imposed by the national currency acts upon all stockholders in national banks.
So that, whatever authority exists on this question is all in the direction of the feme covert's liability. It is obvious, as suggested in the New York case, that to maintain an exemption of married women from liability would greatly facilitate an evasion of the individual liability clause and the practice of frauds against creditors. It would only be necessary for husbands to put the stock in the names of their wives.
Again, sec. 5139 provides that a transferee of stock shall succeed to the rights and liabilities of the prior holder. If a married woman transfers the stock, and she is not liable, it might be held that her transferee is equally exempt. These are. some of the serious difficulties in the way of sustaining the exemption of married women as shareholders.
In a general way, some of the cases speak of the liability of the shareholder as a contract liability, from which its nonexistence is argued in favor of persons not competent to contract to assume that liability. But it will be found that the *496 terms “ contract liability ” are used in the sense of being a liability which will survive against the estate, instead of dying with the person, as would a liability for a mere tort. In our view, however, and that is evidently held in the case already referred to, it is a liability imposed by statute, as an incident to the ownership of the stock, and attaching to all who are capable of that ownership, and without reference to any supposed voluntary assumption of the liability by express or implied contract. And as this is a statutory and not a common law liability, imposed - upon the feme covert as a shareholder, it seems to us, as was also held in 29 Barbour, supra, that it affects her alone, and we think that suit is properly brought against her without joining her husband, which would be necessary in the enforcement of any common law obligation or liability of the wife.
The court below having held the wife’s coverture a protection to her, it follows from the views before stated, that a new trial must be ordered.